## In re North End Fire Company No. 1 Appeal

*Binder & Binder*, for appellant.

*C. Edmund Wells*, for board of adjustment.

*Gerber & Craig*, for protestants.

FORREST, J., December 30, 1952.—This is an appeal of the North End Fire Company No. 1 of the Borough of Pottstown, from the refusal of the Zoning Board of Adjustment of the Borough of Pottstown to grant

a special exception requested by the applicant for permission to erect and use a fire house at the northwest corner of Evans and Prospect Streets in the Borough of Pottstown.

## History

A hearing was held by the board of adjustment on April 21, 1951, and on May 3, 1951, the board, by a written decision, denied the application for this special exception by a vote of 2 to 1.

On May 26, 1952, a hearing on the appeal was held before the writer of this opinion at which time the representatives of the applicant were heard, also four protestants who live in the close proximity to the site in question.

## Findings of Fact

1. Appellant, North End Fire Company No. 1 of Pottstown, is a nonprofit corporation, chartered in Montgomery County on June 15, 1950, with its principal office at 711 North Franklin Street, Pottstown, Pa.

2. Appellant is the equitable owner of certain real estate situate on the northwestern corner of Evans and Prospect Streets, under a conditional agreement of sale, in the Borough of Pottstown, having a frontage along the westerly side of Evans Street of 252 feet and a depth along Prospect Avenue of 130 feet.

3. The premises of appellant are located in an R-2 District under the Pottstown Zoning Ordinance.

4. Article IV of the Pottstown Zoning Ordinance provides, inter alia, as follows:

"Section 400. In R-2 Residence Districts the following regulations shall apply:

"Section 401. A building may be erected, altered or used, and a lot or premises may be used, for any of the following purposes and for no other:

"1. A use permitted in R-1 Residence Districts."

5. Article III regulates the R-1 residence districts and provides, inter alia, as follows:

"Section 301. A building may be erected, altered or used, and a lot or premises may be used, for any of the following purposes and for no other:

"2. Educational, religious or philanthropic use, hospital or sanitarium, when authorized as a special exception."

6. Article XII, sec. 1201, provides:

"The Board of Adjustment shall have the following powers:

"(b) To hear and decide special exceptions to the terms of this Ordinance in such cases as are herein expressly provided for, in harmony with the general purpose and intent of this Ordinance, with power to impose appropriate conditions and safeguards."

7. The applicant has no equipment.

8. There are three other fire companies in the Borough of Pottstown.

9. The population of the Borough of Pottstown is approximately 22,000.

10. This section of the Borough of Pottstown is being rapidly developed and is called the "North end".

11. It is over a mile from the borough line of the north end to the nearest fire company.

12. The site in question is the center of an area arbitrarily defined, which has a radius of 4,000 feet and a circumference of five miles.

13. In this area are one hospital, two schools and several apartment houses.

14. This area is almost exclusively residential.

15. All of the properties in this area zoned "commercial" are occupied and therefore not available.

16. The site in question is adjacent to the property at one corner of Charlotte and Prospect Streets, all four corners of which are zoned commercial.

17. The applicant proposed to construct a residential type building for the housing of a ladder truck and pumper.

## Discussion

The history and circumstances of this case are so similar to those in Nugent v. Whitemarsh Township, 68 Montg. 98 (1952) decided on January 17, 1952, by President Judge Knight, an eminent authority on the subject of zoning, that its mere citation should suffice; however, excerpts will be referred to in substantiation. We will repeat what President Judge Knight has said at page 101:

"We are fully aware of the rule of law repeatedly announced by our appellate courts that the decision of a board of adjustment should not be set aside except for a mistake of law or for flagrant abuse of discretion."

It will be noted from the recitation of the facts that a "philanthropic" use of a building is allowed under the zoning ordinance by special exception. We do not know any organization which is more philanthropic than a volunteer fire company, considering the fact that it preserves not only our property but our lives as well, by services which are rendered almost entirely on a gratis basis. Certainly, a volunteer fire company would come within this allowable exception if the board of adjustment had so decided. However, the majority report of the board of adjustment gave the following reasons for their rejection:

"They felt that the property owners in close proximity to the site should not be ignored. . . .

"This area is strictly residential and it is their opinion that it should not be changed for a fire company. . . .

"They requested that it be stated that they are not against the fire company being erected somewhere in the north end but felt that this was not the proper location."

The one member of the board who favored the application stated:

". . . they could not take into account all the arguments presented by the opposition at the previous meeting, and had to consider the benefit to the entire area. . . .

"He recited the recommendations of the Middle States Department of Fire Underwriters who recommended a decentralization of the present fire companies in Pottstown and that an additional company be formed for the north end which should be, in their opinion, a hook and ladder company. . . .

"He also stated that the location selected was centrally located in the north end and would give the proper protection to all property in this district. Also, the selected location was as close to the present commercial area as it was possible to obtain and was situated just across the alley from the present commercial property on the northeast corner of Charlotte and Prospect Streets."

It is noted that the first two reasons of the majority have to do with the residential character of the neighborhood and the objections by the residents.

"The board should, of course, hear and consider the protests of interested citizens, but the fate of an application for a special exception should not rest alone on the number of protests against it. If the application is meritorious it should be granted regardless of protests": Nugent v. Whitemarsh Township, supra, page 102.

It should also be noted that the majority expressed the opinion that there should be a fire company located in the north end; therefore, the need is recognized and apparently the only reason for the denial of the application was the objections of the residents, who were allowed by the court to intervene in the matter. In this fast changing world, the individual must adjust

himself to advances made for the good of the community and society generally, although it means some discomfiture.

The court does not wish to project its conclusions or opinions into this matter, which is strictly a local one. However, we feel that the board may have been "too far in the woods to see the trees". In other words, it might well have been that they were overwhelmed by the numbers and protestations of the opposition. This is quite understandable. The reasons for the opposition, it would seem, could be swept aside if the board would adopt some regulatory measures, as they are empowered to do under this ordinance. We have no power, and neither do we have any desire, to circumscribe the limitations; however, it would seem that the reasonable objections of the protestants and the reasonable demands of privileges by the applicant, both could be satisfied by a proper order of the board.

We will repeat what was so well said by President Judge Knight in Nugent v. Whitemarsh Township, supra, at page 103, as it is quite appropriate and applicable.

"After fully considering this entire record . . . we have reached the conclusion that the decision of the board was an arbitrary exercise of power without any substantial evidence to sustain it. The board in granting the special exception may impose reasonable conditions . . ."

And now, December 30, 1952, the decision of the Board of Adjustment of the Borough of Pottstown in the above-captioned matter is reversed. The record is remanded to the board with instructions to grant the special exception applied for, subject to such reasonable conditions as the board may impose.

Exceptions may be filed to the above order within 10 days from the date hereof, in the absence of which the above order shall become the final order of the court.